UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RANDY LEE RINDAHL,<br><br>Plaintiff,<br><br>vs.<br><br>MELISSA MAGSTADT, Secretary of Department of Health; STATE OF SOUTH DAKOTA DEPARTMENT OF CORRECTIONS HEALTH SERVICES; UNKNOWN CORRECTIONAL HEALTH SERVICES CLINIC SUPERVISOR; A. HAYNES, Medical Director; M. RECTOR, MD, Medical Provider; A. WELBIG, Certified Nurse Practitioner; S. BLACK, Certified Nurse Practitioner; J. KNUSTSON, Certified Nurse Practitioner; S. GOTTSLEBEN, APRN; DESIRARE KUMMER, Registered Nurse; LISA HARLAN, Registered Nurse; LEANNE PETERSON, Registered Nurse; JOSIE RAND, Registered Nurse / X-Ray Technician; UNKNOWN JANE AND JOHN DOE NURSES; LARRY RHODEN, State of South Dakota Governor; STATE OF SOUTH DAKOTA DEPARTMENT OF CORRECTIONS; A. PIRRAGLIA, Director of Prisons; J. ROEMMICHI,[1] Warden for SDSP; R. JOHNSTON, Facility Warden; AVERA MCKENNAN HOSPITAL (JANE/JOHN DOE PERSONNEL BOARD OF DIRECTORS / TRUSTEES); S. WOODARD, MD, Radiology – Vice Chair of AMG Radiology; JANE / JOHN DOE, Personnel Radiologist working for Avera Lincoln County (1/31/2025 & 12/19/2025); JANE /JOHN DOE, Personnel working for Avera McKennan Hospital; AVERA ST. LUKE'S HOSPITAL (JANE / JOHN DOE PERSONNEL BOARD OF DIRECTORS / | 4:26-CV-04024-RAL<br><br><br>OPINION AND ORDER TO DISMISS ON § 1915A SCREENING |

---

[1] The Court notes that the correct spelling of this defendant's name is Joseph Roemmich.

TRUSTEES); L. LENTER, MD, Radiologist; PETER WEI, MD, Radiologist; YASSINE KANAAN, MD, Radiologist; J. LUZIER, MD, Radiologist; JANE /JOHN DOE, Personnel working for Avera St. Luke's Hospital; AVERA LINCOLN COUNTY (JANE / JOHN DOE PERSONNEL BOARD OF DIRECTORS/TRUSTEE); and JANE / JOHN DOE, Personnel Radiologist working for Avera McKennan Hospital (7/07/2025),

Defendants.

Plaintiff Randy Lee Rindahl, an inmate at the South Dakota State Penitentiary, filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court previously granted Rindahl's motion for leave to proceed in forma pauperis, Doc. 6, and now screens his complaint pursuant to 28 U.S.C. § 1915A.

## I.   Prior Rule 11 Sanction

A different judge than the undersigned previously sanctioned Rindahl under Federal Rule of Civil Procedure 11 for committing fraud on the court. Rindahl v. Daugaard, No. 11-CV-4082-KES, 2011 WL 4549151, at *6 (D.S.D. Sep. 29, 2011). Rindahl is required to "attach a copy of the Report and Recommendation [describing his fraud on the court] and a copy of [the opinion adopting the Report and Recommendation] to any future complaint or initial filing in any state or federal court within the United States." Id. Although Rindahl has not attached a copy of the Report and Recommendation and the opinion adopting it to his complaint, he states that "The Court should take Notice of Rindahl v. Daugaard, 2011 WL 4549151 to which the Court had required Rindahl give Notice of a Rule 11[.]" See Doc. 1 at 35. Thus, this Court deems Rindahl to have substantially complied with his sanction.

2

## II.    1915A Screening

### A.    Factual Background as Alleged by Rindahl

Rindahl alleges violations of his First, Fifth, Eighth, and Fourteenth Amendment rights, Title II of the Americans with Disabilities Act (ADA), and § 504 of the Rehabilitation Act. Doc. 1 at 2. Additionally, Rindahl alleges state-law claims for medical malpractice, breach of contract, and violations of SDCL Chapter 20-10 and SDCL § 24-2-10. Id. Rindahl breaks his complaint into eight issues that provide the basis for his claims. See generally id.

Rindahl does not specify in his complaint in which capacities he sues the defendants. See generally id. But Rindahl submitted a filing entitled "Notice of Corrections / Correct Defect" where he specifies that "All defendants shall be shown within their Unofficial and Official Capacity[,]" Doc. 9 at 1, so Rindahl likely intends to sue the defendants in their individual and official capacities.

Rindahl has previously filed several other lawsuits alleging deliberate indifference to serious medical needs, state-law medical malpractice, and alleged falsification of his medical reports. In one such case, Rindahl alleged that various Avera Medical Group medical providers and South Dakota Department of Corrections (SDDOC) officials were deliberately indifferent to his serious medical needs and fraudulently concealed his medical conditions. Rindahl v. Reisch, No. 22-CV-4073-RAL, Doc. 12 at 8 (D.S.D. Dec. 20, 2022). Those claims did not survive summary judgment. Id. at Docs. 239, 305. In another complaint, Rindahl brought a claim for deliberate indifference to a serious medical need and was initially granted in forma pauperis status. Rindahl v. Reisch, No. 10-CV-4004-KES, Docs. 1, 19 (D.S.D. 2010). The Court later revoked Rindahl's in forma pauperis status based upon his misrepresentations about the course of medical care given by prison medical personnel, and his complaint was dismissed for failure to state a claim

3

upon which relief may be granted. Id. at Doc. 84. In Rindahl v. Webber, Rindahl claimed deliberate indifference to a serious medical need, but the Court denied Rindahl in forma pauperis status because he failed to sufficiently allege imminent danger of serious physical harm. Rindahl v. Webber, No. 09-CV-4084-LLP, Doc. 14 (D.S.D. July 20, 2009). In Rindahl v. Avera Medical Group Board of Directors, Rindahl alleged that he was under imminent danger of serious physical injury due to a previously broken clavicle and rib, and that a radiologist had concealed these conditions. Rindahl v. Avera Med. Grp. Bd. of Dirs., No. 17-CV-4104-RAL, Doc. 9 (D.S.D. Nov. 14, 2017). The undersigned denied Rindahl's motion for leave to proceed in forma pauperis because, even with a liberal construction, Rindahl's complaint did not satisfy the imminent danger of serious physical injury standard. Id.

### 1.    Issue #1: Black Mass

The first issue Rindahl describes in his complaint relates to a "Black Mass / Swelling within the Lower Left Region of the Back of the Brain[.]" Doc. 1 at 2. Due to a "visible swelling" in the "Lower Left Back" of his skull, Rindahl was summoned to Health Services for an ultrasound of his brain. Id. This ultrasound,[2] conducted by Avera McKennan Hospital, showed a "Black Circle measuring at least the size of a 50 piece, with a Light White Circle around it." Id. at 2–3 (emphasis in original omitted). After review of the ultrasound by both Health Services and Avera personnel, Rindahl states that the radiologist, Dr. Lenter, "responded to [the CD of Rindahl's ultrasound] with 'Negative Examine.'" Id. at 3. Rindahl alleges that "[d]uring another examine with the Jane Doe Avera Personnel, [he] referenced Dr. Lenter's comment, to which she had responded: 'How's that possible.'" Id.

---

[2] It is not clear from Rindahl's complaint when this first ultrasound occurred. See Doc. 1 at 2–3.

4

Rindahl claims that this swelling has caused him "Balance and Vision Problems[.]" Id. at 2. After Rindahl "continued to bring forth the issue of extended problems with his health, relevant to the condition with his Brain[,]" a medical provider was consulted, and Rindahl was informed on November 15, 2024, that another ultrasound had been scheduled. Id. at 3. On November 21, 2024, Rindahl was informed that the ultrasound had been cancelled. Id. at 4. Rindahl filed a grievance and was informed by Sergeant Ramsdell on December 11, 2024, that "A CT[3] scan was ordered and approved to be completed due to limited viewing of abdomen[4] with the ultrasound. Due to scheduling of outside being booked out through March, yours has not been scheduled." Id.

Rindahl goes on to allege that these "issues was [sic] to be redressed through Lincoln County Avera" on January 31, 2025, when Avera "conducted further testing of the Head/Neck and Abdomen within a Cat scan[.]" Id. at 5. Rindahl describes an "area of concern" that was shown in the CT scan, which included "the area above the C1, the condition of the Cervical Spinal Cord, adjoin as it extended within the base of Brain, to which were directly related to prior injury that had gone nondiagnosis [sic] within prior images as seen 7/23/2014 & 11/08/2022, as it relates to the C1, and above." Id. at 5 (emphasis in original omitted). Rindahl states that he received another CT scan on July 7, 2025, "finding no such condition[,]" which this Court understands to mean that the black mass did not appear in the CT scan. Id. at 6.

_____

[3] Rindahl uses the terms CT scan and CAT scan interchangeably.

[4] Rindahl alleges that because this correspondence described an "unrelated Issue as seen within his Abdomen[,]" and not Rindahl's concern regarding the swelling in his head, this was a "False Statement" made by Health Services personnel. Id. at 4–5 (emphasis in original omitted). But, as discussed in the following paragraph, Rindahl did receive a CT scan of his head and neck area. See id. at 5.

Overall, Rindahl alleges that "the Mass within the Left Back of his brain going untreated, has been shown within a continued Infliction of needless pain and suffering, and exposure of risk in a prison environment, when shown condition still do pose vision / balance problems." Id. at 7. He alleges that a "failure to Diagnosis [sic] the visible condition of a Brain Mass," as well as the failure to enact a policy "for review of offsite for Err and or Misdiagnosis" "pose[s] a threat to [his] Health and Life."[5] Id. at 24.

### 2. Issue #2: "Nodes within the sub-mandible / and Cervical"

During a nursing sick call meeting, a member of the nursing staff identified a mass within the "Upper Left Lobe" and "advised Rindahl that they would forward the issue to the Medical Provider for follow-up." Id. at 7. On June 2, 2025, Rindahl received an ultrasound which was reviewed by an Avera radiologist, Dr. Peter Wei. Id.; Doc. 4 at 3–4. According to Rindahl, the reviewing radiologist did not inform Rindahl of the cause of the lump, "nor any treatment requirement[,]" which Rindahl alleges caused him "to suffer from a continually growing condition that had caused [him] to suffocate at times while eating certain foods, when said Nodule had applied pressure to the air passage[.]" Doc. 1 at 7–8. Rindahl states that a "Nodule (tumor)" was also identified in his "Upper Right Lobe" on July 7, 2025.[6] Id. at 6.

In late August or early September of 2025, nursing staff allegedly informed Rindahl of a mass they had identified "within the Upper Left Lobe, and advised Rindahl the Lump had been set deep into the Left Side of the neck[.]" Id. at 8. Rindahl alleges that the nursing staff told him that

---

[5] Rindahl makes this same claim regarding a policy for offsite error throughout his complaint as it relates to each of the medical issues he asserts. See Doc. 1 at 26, 28, 30, 31, 33.

[6] Rindahl alleges that the radiologist's report identifying this nodule was "later revealed to be a False Diagnostic Report," but does not provide a clear explanation as to why this report was false. Doc. 1 at 6 (emphasis in original omitted).

6

this explained the suffocation he had experienced at times and requested review by a medical provider. Id. Rindahl was then scheduled for a CT scan on December 19, 2025. Id. Because of the delay between his initial consultation with nursing staff and his scheduled CT scan, Rindahl asserts that he "continually suffer[ed] from needless Wanton Infliction of pain and suffering and suffocation[.]" Id.

When Rindahl received a CT scan of his neck and abdomen, he alleges that SDDOC "[Health Services] Personnel had failed to raise grievance with not only Canton Avera, but with the The [sic] State of South Dakota Department of Health, when shown to have left out priory diagnosis nodes measuring 16mm within the sub-mandible, adjoin prominent 11mm nodes within the cervical, to which have gone untreated to date[.]" Id. at 9 (emphasis in original omitted). Because Rindahl has not received treatment for this condition, and because no further testing has occurred to "rule out Hodgkin Lymphoma[,]" Rindahl states that he has suffered "Night Sweats, cold, Lymph Nodes, Fevers and Swelling to the abdomen." Id. (emphasis in original omitted).

Rindahl alleges that the "inaction[]" regarding these nodes constitutes a deliberate disregard to his health and a "possible threat to his life[.]" Id. at 6. In addition to his having "a condition that poses an environment of possible cancer" regarding the 16mm nodes, Rindahl alleges that the 11mm nodes in his cervical area pose a "threat of possible lose [sic] of his ability to walk[.]" Id. Further, Rindahl claims that "failure to disclose for treatment the Nodes that had commenced to show themselves within said timeline, and thereafter, when posing within the symptoms within threat of Hodgkin Disease[.]" Id. at 24.

### 3.    Issue #3: Palpated Mass to the Upper Right Chest

In July of 2024, Rindahl attended a Health Services consultation with CNP Knustson regarding a 4.5" x 2" mass on the upper right side of his chest. Id. at 10; Doc. 4 at 4. Rindahl

7

alleges that an ultrasound was ordered because "the condition had posed itself as a [sic] area of concern, and would probable [sic] need to be surgically removed[.]" Doc. 1 at 10. Rindahl received an ultrasound of the upper right side of his chest on September 9, 2024. Id. Rindahl observed the ultrasound, and "under his uneducated impression" he observed a mass that "impressed into [his] Right Lung, taking up at least 40% thereof[, and] explaining [his] inability to Breath [sic] [.]" Id. According to Rindahl's self-diagnosis, this mass also explained the pressure he felt in his chest cavity and the pain he felt that "mimicked a heart attack / or created/caused a heart attack due to direct pressure being applied by the Mass." Id. at 10–11. During the ultrasound, Rindahl also observed a one-fourth inch "Semi-Circle Black Mass attached to the back of the Right Lung[.]" Id. at 11.

The ultrasound was followed by "Imaging" conducted by an X-ray technician, Josie Rand, who gave the imaging to a radiologist. Id. As this Court understands Rindahl's allegations, the radiologist who reviewed the imaging, Dr. Peter Wei, determined that Rindahl had a chest cold. Id. Rindahl claims that this imaging also showed an "infection to Rindahl's abdomen, and an unexplained mass within the abdomen[,]" which has "posed an unnatural condition that has caused Rindahl to suffer from stomach sickness and wanton infliction of pain and suffering within his mid-drift." Id. at 10–11.

Rindahl also states that the masses in his chest and abdomen have caused him to "suffer from needless Wanton Infliction of Pain and Suffering, within an unidentified respiratory failure, and Chest Pains as the swelling applies pressure to [his] Chest." Id. at 14. Rindahl alleges that "indifference" to these conditions "has placed Rindahl's health within continued endangerment, and does pose a threat to his Life[.]" Id. In addition to this indifference, Rindahl alleges that "failure to Diagnosis [sic] the Mass" and "has posed threat to [his] Health and Life[.]" Id. at 27.

8

### 4.    Issue #4: Fracture Undisclosed

After imaging was conducted of Rindahl's upper torso, it was reviewed by an Avera radiologist, Dr. Yassin Kanaan,[7] on August 2, 2024. Id. at 15. Rindahl alleges that "even to the layman, the image displays a visible fracture to the Upper Left Rib Cage." Id. Rindahl asserts that Dr. Kanaan and the State of South Dakota have "defrauded" him due to their failure to provide treatment regarding this fracture, and that he has therefore faced "continued suffering" and "intentional Wanton Infliction of Pain and suffering." Id. at 15–16. Additionally, Rindahl alleges that Dr. Kanaan "acted within [sic] indifference to [his] Health under the eighth amendment, when shown to have failed / and or refused to bring forth a visible fracture, causing [him] to suffer from continued Wanton Infliction of Pain and Suffering, and risk of further injury extending therefrom[.]" Id. at 29.

### 5.    Issue #5: Fatty Liver Disease

Rindahl received an ultrasound on September 9, 2024, which "included disclosure of Fatty Liver Disease and kidney disease." Id. at 11, 16. Rindahl alleges that "[t]his lapse of identifying said condition for treatment[,]" coupled with failure to "diagnosis a treatment protocol[,]" has "pos[ed] a continued threat to [his] health, and a possible threat to his life, when showing to have with possible intent overlooked said condition for over a year now." Id. at 16–17.

### 6.    Issue #6: Unregulated Diabetes

In August or September of 2025, Rindahl reported to sick call "for a condition developing within area of his Toes[.]" Id. at 17. Rindahl alleges that his toes were turning a brown and black color, and that he experienced "a [sic] unnatural crackling pain within the toes." Id. He discussed

---

[7] Rindahl provides inconsistent spellings of this defendant's name. This Court uses the spelling Rindahl uses most consistently.

this condition with a nurse, who told Rindahl the condition was diabetes-related and that his toes were "dying." Id. Rindahl was informed that a medical provider would be consulted. Id. at 18.

After meeting with nursing sick call for the third time about his toes in December, 2025, Rindahl felt that there had been a "continued delay" in addressing his condition, and therefore filed an eKite "addressing his concerns of the 'States' [sic] failure to address said issue through proper contractual Medical Provider[.]" Id. (emphasis in original omitted). In response to his eKite, Rindahl states that he was informed that a "reduction of his condition" occurred, because the response only stated that there was redness in Rindahl's toes and that he could purchase pain medication from the commissary if necessary. Id. Rindahl alleges that his diabetes has gone unregulated, and that he faces a "continued threat of loss of his digits, and possible [sic] life." Id. at 19.

### 7.    Issue #7: Failure to Enforce DOC Policy

Rindahl states that he has sought enforcement of his "Single Cell status" under the Prison Rape Elimination Act (PREA) from the SDDOC. Id. at 20. Because of his attempts to enforce his single-cell status, Rindahl claims he has been threatened by SDDOC personnel. Id. Rindahl alleges that he has filed eKites attempting to redress the situation, but that his concerns have not been addressed, which has placed his "health and safety within a [sic] intentional endangerment, and to cause physical harm/injury, when shown to intentional refuse to enforce a PREA Regulation[.]" Id. at 20–21.

### 8.    Issue #8: Federal Deceit/Fraud

In the section of his complaint labeled "Federal Deceit / Fraud[,]" Rindahl alleges that the enactment of a DOC Policy regarding a code of ethics for DOC staff is inconsistent with SDCL § 24-1-25 to the extent that the enactment of an inconsistent policy constitutes "a form of deceit"

10

and "intentional Fraud[.]" Id. at 21–22. SDCL § 24-1-25 provides that "[n]o person employed by the Department of Corrections may have any pecuniary interest in any contract or business conducted by the department." Id. at 21. Rindahl alleges that the "Department of Corrections has a duty to give Notice to Avera Medical Group that an offender such as [Rindahl], has complied a Grievance against one or more of its personnel as it relates to the provisions of Medical / Medical [sic] Treatment, that said inaction actions of said personnel have been shown within negligence and or indifference to said care, placing [Rindahl] within possible Imminent Danger of continued injury, and or Disability and Death." Id. at 22–23. Rindahl further claims that "the State has displayed a continued callous approach to the possible conditions of disability, an [sic] or death, within a bias forum, and a blanket of cover by the State for its intentional endorsement of Deceit / AND OR Fraud!" Id. at 23–24.

In this section, Rindahl also alleges that there has been a "defrauding of [Rindahl] of the contractually mandated Medical / Medical [sic] Treatment under Avera Medical Group[,]" and that "these inaction actions have not been limited to a single incident, when shown to have created an international Breach of Contract" between Avera and the Department of Corrections. Id. at 22. Further, Rindahl makes allegations of "Health Care Fraud though one of the School of Medicines[.]" Id. at 23; see also id. at 34 (stating that "the Department of Corrections has acted within cause to conceal the elements of Criminal Health Care fraud[.]").

### B.    Legal Analysis

#### 1.    § 1983 Claims

##### a.    Official Capacity Claims for Monetary Relief

Rindahl sues the defendants in their official capacities and seeks monetary relief. See Doc. 1 at 34, Doc. 9 at 1. But "Section 1983 plaintiffs may sue individual-capacity defendants only for

11

money damages and official-capacity defendants only for injunctive relief." Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd., 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity."). Therefore, Rindahl's official capacity claims for monetary relief against all defendants are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### b.    Individual Capacity Claims for Monetary Relief

Rindahl sues all defendants in their individual capacities and seeks monetary relief. Doc. 1 at 2, 5. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citation modified). In other words, Rindahl's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

### i.    Deliberate Indifference to Serious Medical Needs

Rindahl's filings are disjointed and duplicative, and his claims are often difficult to understand and do not make clear what claims he is bringing against which defendant. The

12

majority of Rindahl's claims are Eighth Amendment deliberate indifference to serious medical needs claims against two groups of defendants: (1) medical personnel, both employed by the SDDOC and at various Avera facilities, and (2) SDDOC officials. See generally Doc. 1. Rindahl's deliberate indifference claims are related to the six medical "issues" outlined above: (1) the "black mass[,]" (2) "[n]odes within the sub-mandible / and Cervical[,]" (3) palpated mass to the upper right chest, (4) an undisclosed fracture, (5) fatty liver disease, and (6) unregulated diabetes. Id. at 1–19.

Rindahl's references to violations of his Eighth Amendment rights are coupled with references to violations of his Fifth Amendment rights. See Doc. 1 at 24, 25, 27, 28, 30, 31, 32, 33, 34. Rindahl's complaint appears to assert deliberate indifference to serious medical needs claims under both the Eighth and Fifth Amendments. "Although the Eighth Amendment has no application until there has been a formal adjudication of guilt, the Fourteenth Amendment gives state pretrial detainees—just as the Fifth Amendment gives federal pretrial detainees—rights which are *at least as great* as the Eighth Amendment protections available to a convicted prisoner." Walton v. Dawson, 752 F.3d 1109, 1117 (8th Cir. 2014) (citation modified). Rindahl does not allege that he was a pre-trial detainee at the time the events giving rise to the present action occurred. See generally Doc. 1. At the time Rindahl filed his complaint, he was incarcerated at the South Dakota State Penitentiary, see Doc. 2 at 1, so his claims fall under the Eighth Amendment.[8]

---

[8] This Court has reviewed Rindahl's complaint for other possible Fifth Amendment violations and cannot discern a claim arising under the Fifth Amendment. Therefore, any other claims Rindahl intended to bring under the Fifth Amendment are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§1915(e)(2)(B)(ii) and 1915A(b)(1).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal citation omitted) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will "mere disagreement with treatment decisions." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is akin to criminal recklessness, falling

14

somewhere between 'negligence at one end and purpose or knowledge at the other.'" Cannon v. Dehner, 112 F.4th 580, 587 (8th Cir. 2024) (quoting Farmer, 511 U.S. at 836).

### I.    Medical Personnel

As an initial matter, it is often not clear which defendant Rindahl is referring to when alleging his deliberate indifference to serious medical needs claims. Rindahl does mention specific providers in the facts section of his complaint. See, e.g., Doc. 1 at 3, 15. But in the section of his complaint outlining his claims, Rindahl refers to "said Radiologist" or "John and Jane Doe personnel." See, e.g., id. at 24–25. Liberally construing his complaint, this Court understands Rindahl's deliberate indifference claims to be against the radiologists and unknown medical personnel at Avera,[9] as well as medical personnel employed by the SDDOC, but notes that "[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." Tatone v. SunTrust Mortg., Inc., 857 F. Supp. 2d 821, 831 (D. Minn. 2012).

### A.    Issues #1, 2, 3, 4

Several of Rindahl's deliberate indifference claims revolve around his disagreement with various diagnoses. Beginning with Issue #1, the black mass, Rindahl's own allegations show that he has received care for his concerns regarding a black mass that appeared in imaging scans. Doc.

---

[9] Rindahl names several defendants employed at various Avera facilities. See Doc. 1 at 1. Although a private actor does not act under color of state law merely because it performs a public contract, Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982), the Supreme Court of the United States has noted that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." West v. Atkins, 487 U.S. 42, 56 (1988). Thus, the Court will treat these defendants as acting under color of state law for screening purposes but makes no finding of fact on that point.

1 at 2–3. Imaging was conducted for the areas related to Rindahl's concerns, id. at 2, 5, but Rindahl disagreed with the interpretation of the testing that was performed and considers it to be a "False Diagnostic Report[.]" Id. at 6 (emphasis in original omitted). Rindahl states that the "failure to disclose / and or bring forth for treatment of a condition within the area of the Upper Left Lobe[]" demonstrates deliberate disregard to his health and "a *possible* threat to his life." Id. (emphasis added).

Rindahl was also seen by providers for Issue #2, the issue relating to "Nodes within the Sub-mandible / and Cervical[.]" Id. at 7–9. Rindahl was seen at sick call and received two ultrasounds and a CT scan after complaints about a lump on the side of his neck. Id. After his first ultrasound, Rindahl alleges that the unknown radiologist "had not afforded any notice of the cause of the Lump, nor any treatment requirement[,]" which this Court understands to mean that the radiologist did not diagnose the lump or prescribe Rindahl with required treatment. Id. at 7. Rindahl claims that his second CT scan "left out priory diagnosis nodes measuring 16mm within the sub-mandible, adjoin prominent 11mm nodes within the cervical, to which have gone untreated to date[.]" Id. at 9. In short, Rindahl's second CT scan did not show the "nodes" that appeared in his original imaging. Rindahl takes issue with not receiving further testing "to rule out Hodgkin Lymphoma[.]" Id.

Rindahl also alleges deliberate indifference based on Issue #3, regarding a palpated mass in his right chest. Id. at 10. CNP Jenna Knustson ordered an ultrasound based on the palpated mass being an "area of concern[.]" Id. Rindahl observed the ultrasound as it was conducted, "revealing to [him] a Mass by which under his uneducated impression . . . explain[ed] Rindahl's inability to Breath [sic]," as well as the heart-attack-like symptoms he experienced. Id. at 10–11. Rindahl received more testing, which was reviewed by Avera radiologist Dr. Peter Wei, who

determined that Rindahl's imaging was consistent with a chest cold. Id. at 11. Rindahl disagrees. Id. He states that Dr. Wei "failed to disclose a visible condition of what could only be summed up to even the layman, an extending infection to Rindahl's abdomen, and a [sic] unexplained mass within the abdomen." Id. Rindahl also states that he had a follow-up appointment with CNP Welbig, who "identif[ied] the Mass In Question, affording Rindahl [a] follow up with a General Surgeon for removal, and any other possible treatments[.]" Id. at 14.

As for Issue #4, Rindahl alleges that Dr. Yassine Kanaan read imaging of Rindahl's upper torso, which Rindahl claims "displays a visible fracture to the Upper Left Rib Cage[,]" but that went "undisclosed through the inaction's actions" of personnel contracting with the SDDOC for medical treatment. Id. at 15–16. Rindahl asserts that because this fracture has gone "undisclosed[,]" Dr. Kanaan has "defrauded Rindahl of said promise to provide Medical / and Medical Treatment[.]" Id. at 16.

Each of these claims center on Rindahl's "disagreement with [his] diagnosis, or lack thereof, [which] does not establish a deliberate indifference claim." De Rossitte v. Correct Care Sols., Inc., 22 F.4th 796, 803 (8th Cir. 2022). Rindahl's claims for deliberate indifference involving Issues #1, 2, 3, and 4 fail because he does not allege more than mere disagreement with the various diagnoses he received. See Phillips v. Jasper Cnty. Jail, 437 F.3d 791, 795 (8th Cir. 2006) (holding that mere disagreement with a treatment decision is not enough); Dulany, 132 F.3d at 1240 ("[A]n inmate is not entitled to any particular course of treatment."). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Kulkay v. Roy, 847 F.3d 637, 643 (8th Cir. 2017) (quoting Est. of Rosenberg, 56 F.3d at 37). Here, Rindahl disagrees with the various providers' interpretations of imaging he received and what course of treatment

those providers deemed necessary. At most, Rindahl has claimed possible negligence on the part of these medical personnel, which falls short of the mental state akin to criminal recklessness necessary to establish deliberate indifference. Therefore, Rindahl's deliberate indifference to serious medical needs claims for Issues #1, 2, 3, and 4, against all medical personnel defendants, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§1915(e)(2)(B)(ii) and 1915A(b)(1).

### B.    Issue #5: Fatty Liver Disease

Rindahl also alleges a deliberate indifference claim based on a lapse in diagnosing him with fatty liver disease. Doc. 1 at 16–17. Rindahl asserts that continued indifference and a failure to treat this condition have posed a continued threat to his health and life. Id. at 17. As stated above, the deliberate indifference standard includes both an objective and a subjective component, and a plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulany, 132 F.3d at 1239.

Rindahl states that fatty liver disease has "been defined as a serious medical need[,]" and it certainly can be depending on its stage. Doc. 1 at 17 n.2. But this statement alone does not mean he has a viable claim because "[a]n inmate's bare assertions are insufficient evidence of serious medical need." Cannon, 112 F.4th at 586. "To constitute an objectively serious medical need or a deprivation of that need, . . . the need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." Id. (internal quotation omitted). Here, Rindahl alleges that the lapse in diagnosis posed a risk to his health, which, to state the obvious, means that for a time his fatty liver disease was undiagnosed. Therefore, to show that fatty liver disease was a serious medical need that should have been

18

diagnosed sooner, Rindahl would need to show that his fatty liver disease would have been obvious to a layperson. Id. Rindahl does not provide any symptoms he experienced that would have alerted a layperson to this issue. Indeed, Rindahl does not state any symptoms he is experiencing from his fatty liver disease at all.[10] See Doc. 1 at 16–17, 30–32; see also Doc. 4 at 6–7. He merely states that the failure to "bring forth for treatment[] pos[es] a continued threat to Rindahl's health, and a possible threat to his life, when showing to have with possible intent overlooked said condition for over a year now." Doc. 1 at 17. Therefore, Rindahl has not established that he had a serious medical need prior to his diagnosis.

Regardless, Rindahl has failed to allege facts that each individual defendant actually knew of and deliberately disregarded his medical needs. Rindahl states that "[Health Services] Medical Director, adjoin his personnel Rector MD & Welbig/Knustson, not to exclude [Avera's] Radiologist, have, and still do show indifference to said condition, when shown failing to bring forth for treatment[.]" Id. But "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." Dulany, 132 F.3d at 1240 (citation omitted). Here again, Rindahl fails to claim more than a disagreement with treatment decisions or provide any facts that the defendants knew of and deliberately disregarded risks to Rindahl's health created by his fatty liver disease. Further, when an inmate "alleges that a *delay* in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation *should also* be measured by reference to the effect of delay in

---

[10] It is not clear that Rindahl's fatty liver disease constituted a serious medical need even after it had been diagnosed. While "[a] serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention[,]" Coleman, 114 F.3d at 785 (citation modified), Rindahl does not allege what, if any treatment is necessary, or that he has suffered any symptoms related to fatty liver disease.

19

treatment." Dantzler v. Baldwin, 133 F.4th 833, 843 (8th Cir. 2025) (quotation omitted). Here, Rindahl does not claim that he has been harmed by a delay in treatment and instead states that the "lapse of identifying said condition for treatment has *posed a risk* to Rindahl's Health[.]" Doc. 1 at 16 (emphasis added); see also id. at 17 (stating that the "fail[ure] to bring forth for treatment" has posed a "possible threat" to Rindahl's life). When asserting a deliberate indifference claim, a plaintiff must plead that he was harmed by the delay, and "[w]here pain or discomfort is the sole effect of a delay in treatment, an inmate fails to state a deliberate indifference claim." Reed v. Weber, No. 10-CV-4069-KES, 2010 WL 3363402, at *4 (D.S.D. Aug. 23, 2010) (citing Williams v. Dep't of Corrs., 208 F.3d 681, 682 (8th Cir. 2000)). Therefore, Rindahl's deliberate indifference to serious medical needs claims related to his fatty liver disease, against all medical personnel defendants, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§1915(e)(2)(B)(ii) and 1915A(b)(1).

### C.    Issue #6: Unregulated Diabetes

As a result of his diabetes, Rindahl states that his toes became discolored and he experienced an "unnatural crackling pain within the toes." Doc. 1 at 17. For purposes of screening, Rindahl's diabetes constitutes a serious medical need. But he still must allege that the defendants "recognized that a substantial risk of harm existed and knew that their conduct was inappropriate in light of that risk." Shipp v. Murphy, 9 F.4th 694, 703 (8th Cir. 2021) (citation modified).

Rindahl avers that he was seen at sick call in August or September of 2025, where the unknown nurse informed him that his toes were dying due to his diabetes. Doc. 1 at 17. The nurse informed Rindahl that she would forward the condition to a medical provider for review. Id. at 18. At another sick call, Rindahl discussed his diabetes with another unknown nurse, who again informed Rindahl that she would "attempt to redress the condition with the Medical Provider." Id.

20

Rindahl was seen again in December of 2025. Id. Rindahl alleges that after a "continued delay within redress," he filed an eKite, and received a response that there had been a "reduction of the condition, citing only redness," which this Court understands to mean that Rindahl's diabetes-related symptoms had improved. Id. After he was informed that his symptoms had improved, Rindahl was advised that if he experienced pain, he could purchase his own pain medication from the commissary. Id.

Rindahl alleges that his diabetes has "continued to identified [sic] itself within Chronic Care Blood workup," as a January 17, 2026 test showed elevated glucose levels. Id. at 19. Rindahl asserts that "[Health Services] Personnel have delayed / and or refused to address, as seen within Rindahl's Toe Color Changes within continued threat of loss of his digits, and possible life." Id. But Rindahl again fails to allege any specific behavior on the part of specific defendants that constitutes deliberate indifference. See id. at 17–19, 32–33. As mentioned previously, "[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." Tatone, 857 F. Supp. 2d at 831. Further, by his own allegations, Rindahl's diabetes is being monitored, and his treatment plan includes buying pain medication as needed. As stated earlier, Rindahl also appears to allege that his diabetes-related symptoms have improved. See Doc. 1 at 18 (stating that there has been a "reduction of the condition"). Again, Rindahl's disagreement with treatment decisions does not constitute deliberate indifference, and "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." Dulany, 132 F.3d at 1240 (citation omitted).

To the extent that Rindahl is alleging that being instructed to buy his own pain medication constitutes a violation of the Eighth Amendment, this claim fails as well. As this Court has previously informed Rindahl, "[i]t is well established that the Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." Jackson v. Dameron, No. 7:22-CV-00090, 2025 WL 877558, at *8 (W.D. Va. Mar. 20, 2025) (internal quotations omitted) (quoting Poole v. Isaacs, 703 F.3d 1024, 1026 (7th Cir. 2012)); Rindahl v. Reisch, No. 4:22-CV-04073-RAL, Doc. 305 at 31 (D.S.D. Sep. 30, 2025). In this context, "a prison official violates the Eighth Amendment by refusing to provide prescribed [over-the-counter] medicine for a serious medical need only if the inmate lacks sufficient resources to pay for the medicine." Taylor v. Corizon Med. Servs., No. 1:11-CV-1436-JMS-DKL, 2013 WL 4678670, at *6 (S.D. Ind. Aug. 30, 2013) (quoting Hudgins v. DeBruyn, 922 F. Supp. 144, 150 (S.D. Ind. 1996)). Although Rindahl is proceeding in forma pauperis in this action, he makes no allegations that he lacks sufficient funds to pay for the medication. Therefore, Rindahl's deliberate indifference to serious medical needs claims related to his diabetes, against all medical personnel defendants, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.    Claims Barred by Res Judicata

In a previous lawsuit, Rindahl brought state-law medical malpractice claims against Dr. Woodward and Dr. Lenter, as well as claims alleging deliberate indifference to serious medical needs. Rindahl v. Reisch, No. 22-CV-4073-RAL, Doc. 239 at 1. Rindahl also brought claims against Avera Medical Group (AMG) for deliberate indifference to serious medical needs. Id. at Doc. 12 at 34–35. While it is not entirely clear what claims Rindahl is attempting to assert against Dr. Woodward, Dr. Lenter, and AMG in the current action, to the extent that Rindahl is attempting

22

to bring the same claims against these defendants that were subject to summary judgment in Rindahl v. Reisch, No. 22-CV-4073-RAL, those claims are barred by the doctrine of res judicata.

Res judicata applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998) (citations omitted). "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." Murphy v. Jones, 877 F.2d 682, 684–85 (8th Cir. 1989) (citations omitted). Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980) (citing Cromwell v. County of Sac, 94 U.S. 351, 352 (1876)).

Res judicata is an affirmative defense under Federal Rule of Civil Procedure 8(c)(1). However, the United States Court of Appeals for the Eighth Circuit has affirmed dismissal of complaints on res judicata grounds at the screening stage. See Waller v. Groose, 38 F.3d 1007, 1008 (8th Cir. 1994) (per curiam) (discussing the res judicata effect of prior dismissals "on frivolousness determinations for future in forma pauperis petitions" (quoting Denton v. Hernandez, 504 U.S. 25, 34, (1992))). Although Waller considered the preclusive effect of a prior screening dismissal under 28 U.S.C. § 1915 on future screenings, the Eighth Circuit stated that res judicata can apply at the screening stage. See id.

Rindahl previously asserted claims against Dr. Woodward for Eighth Amendment deliberate indifference and state-law medical malpractice. Rindahl v. Reisch, No. 22-CV-4073-RAL, Doc. 239 at 2. Rindahl alleged that Dr. Woodward should have observed shrapnel in his

23

spine, that she intentionally misdiagnosed him or withheld information from him because she did not diagnose liver swelling, and that she failed to refer Rindahl for further testing. Id. at 7. This Court determined that Dr. Woodward was entitled to summary judgment on Rindahl's Eighth Amendment deliberate indifference claim and state-law medical malpractice claim. Id. at 18, 26. Here, the only mention Rindahl makes of Dr. Woodward is in the case caption. See Doc. 1 at 1. But he does mention issues with his liver, id. at 11, 16–17, and with his spine, id. at 5. To the extent that Rindahl is attempting to assert these same claims against Dr. Woodward in the current action, these claims are barred by res judicata.

Rindahl also previously asserted claims against Dr. Lenter for Eighth Amendment deliberate indifference and state-law medical malpractice. Rindahl v. Reisch, No. 22-CV-4073-RAL, Doc. 239 at 2. Rindahl claimed that Dr. Lenter falsified reports and that he should have observed and diagnosed a rib fracture, a liver condition, and other medical conditions. Id. at 6. This Court determined that Dr. Lenter was entitled to summary judgment on Rindahl's Eighth Amendment deliberate indifference claim and state-law medical malpractice claim, and that Rindahl's state-law medical malpractice claims against Dr. Lenter were time barred. Id. at 19–20, 26. It is not clear what other claims Rindahl may be attempting to assert against Dr. Lenter in the current action. The only reference Rindahl makes to Dr. Lenter in the body of his complaint is that Dr. Lenter left a comment on a CD which stated "Negative Examine[.]" Doc. 1 at 3. When Rindahl showed this CD with Dr. Lenter's comment to "Jane Doe Avera Personnel," she responded, "How's that possible." Id. This statement does not make clear what claim Rindahl is attempting to assert against Dr. Lenter, or how this comment resulted in an injury to Rindahl. To the extent that Rindahl is attempting to assert the same claims against Dr. Lenter in the current action that he brought in his previous action, these claims are barred by res judicata.

Rindahl also previously asserted Eighth Amendment deliberate indifference claims and state-law medical malpractice claims against AMG. Rindahl v. Reisch, No. 22-CV-4073-RAL, Doc. 12 at 34–35. But these claims did not survive summary judgment because Rindahl had not alleged that AMG had an unconstitutional policy, custom, or action that resulted in a constitutional violation, and because all AMG employees named as defendants were not liable in negligence to Rindahl and Rindahl did not allege any independent acts of negligence by AMG. Id. at 239 at 22–23, 28. In his present complaint, Rindahl references the actions of AMG personnel but does not mention specific acts on the part of AMG. To the extent that Rindahl is attempting to assert the same claims against AMG in the current action that he brought in his previous action, these claims are barred by res judicata.

### III.        SDDOC Supervisors

As it pertains to each of the six issues relating to Rindahl's health described above, Rindahl also alleges that the Director of Medical (Dr. Haynes), Warden Roemmich, Facility Warden Johnston, and Director of Prisons Pirraglia have demonstrated deliberate indifference to Rindahl's health by their failure to "enact policy for review of offsite for Err and or Misdiagnosis[.]" Doc. 1 at 25, 26–27, 28, 30, 31, 33. This Court liberally construes this as an Eighth Amendment deliberate indifference claim against a supervisor based on failure to train or supervise. "A failure-to-supervise claim faces a rigorous standard that the superior (1) had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right; (2) was deliberately indifferent to or authorized such violations; (3) failed to take remedial action; and (4) that failure caused the inmate's injury." Arnett v. Norris, 160 F.4th 921, 929 (8th Cir. 2025). "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." Id. (quoting Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994)). "Even

if the supervisors are not involved in the day-to-day operations that led to the incident at issue, personal involvement may be found if the supervisors were involved in 'creating, applying, or interpreting a policy that gives rise to unconstitutional conditions.'" Id. at 929–30 (quoting Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014)).

Here, Rindahl does not claim that Haynes, Roemmich, Johnston, or Pirraglia had notice of a violation of a clearly established constitutional right. Indeed, Rindahl's complaint reflects his disagreement with the diagnoses and treatment plans he received, which does not constitute a violation of the Eighth Amendment based on deliberate indifference to a serious medical need. Even if Rindahl had alleged that these officials had notice of a violation of a clearly established constitutional right, his claims do not establish that the officials were deliberately indifferent to or authorized these violations. See Jackson v. Nixon, 747 F.3d at 545 (providing that a "warden's general supervisory authority over prison operations does not make him [or her] liable under § 1983[,]" and conclusory statements that an official "'knew or should have known' of the alleged [constitutional] violation is insufficient."); Ripson, 21 F.3d at 809 (citation omitted) ("[M]ere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983."). Therefore, Rindahl's claims against Haynes, Roemmich, Johnston, and Pirraglia are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### i.     Claims Against Magstadt and Rhoden

Rindahl also names Melissa Magstadt, the Secretary of the Department of Health, and South Dakota Governor Larry Rhoden as defendants. Doc. 1 at 1. While she is listed in the case caption, Magstadt is not mentioned in the body of Rindahl's complaint. See generally id. Rindahl mentions Governor Rhoden in the section of his complaint discussing Issue #4, the "fracture

26

undisclosed[.]" Id. at 15. Rindahl states that "[t]his Fracture has gone undisclosed thru [sic] the inaction's [sic] actions of personnel under contract with the State of South Dakota thru [sic] its Department of Corrections, to which the State under direct supervision of Larry Rhoden, . . . has enacted contract with Avera Medical Group to provide the population of its prisons with . . . Medical Treatment." Id. at 15–16. When discussing Issue #8, regarding "Federal Fraud / Deceit[,]" Rindahl states that

> within the Case of the State of South Dakota, and the Governor, Rindahl asserts the State has acted within Indifference to the Betterment through its Department of Corrections, when shown to afford the Administration to enact DOC Regulation that extends outside the strict requirements of State Law SDCL § 24-1-25; that within such, the Department of Corrections has acted within cause to conceal the elements of Criminal Health Care fraud[.]

Id. at 34.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "Section 1983 liability is personal[,]" and a plaintiff seeking to establish liability against supervisory officials "must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.'" Jones v. City of St. Louis, 104 F.4th 1043, 1049 (8th Cir. 2024) (citations omitted). Here, Rindahl alleges no facts that either Magstadt or Rhoden had any personal involvement, or direct responsibility for, the alleged deprivation of Rindahl's rights. See generally Doc. 1. While Rindahl states that, as Governor, the SDDOC is under Rhoden's "direct supervision[,]" Doc. 1 at 16, "naked assertions devoid of further factual enhancement[]" are not enough to state a claim. Iqbal, 556 U.S. at 678 (citation modified).

While Rindahl's claims against Magstadt presumably relate to her supervisory authority as the Secretary of the Department of Health, the only time Magstadt is mentioned in Rindahl's

27

complaint is in the case caption. See generally Doc. 1. But "[s]imply placing a defendant's name in the caption is not enough to assert their responsibility." Mencin v. City of Troy Police, No. 4:24-CV-852, 2024 WL 4370846, at *3 (E.D. Mo. Oct. 2, 2024). See also Krych v. Hvass, 83 F. App'x 854, 855 (8th Cir. 2003) (per curiam) (holding that a plaintiff "failed to state any claim whatsoever" against defendants when "he merely listed these individuals as defendants in his complaint and did not allege they were personally involved in the constitutional violations."); Batchelder v. I.N.S., 180 F. App'x 614, 615 (8th Cir. 2006) (per curiam) (affirming the district court's dismissal of a complaint because its "largely unintelligible and incomprehensible allegations fail to provide fair notice of [the plaintiff's] claims and the grounds upon which they rest."). Therefore, Rindahl's claims against Magstadt and Rhoden are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### ii.        Claims Against the SDDOC and SDDOC Health Services

Rindahl also brings claims against the SDDOC and SDDOC Health Services. Doc. 1 at 1. Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution[.]" 42 U.S.C. § 1983. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90–91 (1982). "In determining the applicability of the eleventh amendment to the political subdivisions of the state, the court must 'examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state. Courts typically look at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury.'" Greenwood v. Ross,

28

778 F.2d 448, 453 (8th Cir. 1985) (quoting Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982)).

The SDDOC was created by the state legislature. See SDCL § 1-15.1.2. The SDDOC is an arm of the State of South Dakota and, as such, is not subject to suit in federal court under § 1983. Rindahl's § 1983 claims against the SDDOC and SDDOC Health Services are dismissed with prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[11]

### iii.    Claims Against Avera Facilities

Rindahl names as defendants various Avera facilities, including Avera McKennan Hospital, Avera St. Luke's Hospital, and Avera Lincoln County.[12] Doc. 1 at 1–2. Under § 1983, a corporation cannot be held vicariously liable for the acts of its employees. Burke v. N.D. Dep't of Corr. & Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (citing Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975–76 (8th Cir. 1993)). "[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts

---

[11] Although SDDOC is not subject to suit under § 1983, this Court addresses Rindahl's claims against the SDDOC under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act below. See infra, at 36–41.

[12] In his case caption, Rindahl specifically refers to these defendants as "Avera McKennan Hospital (Jane/John Doe Personnel Board of Directors / Trustees)[,]" "Avera St. Luke's Hospital (Jane/John Doe Personnel Board of Directors / Trustees)[,]" and "Avera Lincoln County (Jane/John Doe Personnel Board of Directors / Trustee)[.]" Doc. 1 at 1–2. To the extent that Rindahl intends to bring claims against individual members of the Board of Directors at these Avera facilities, these claims fail. Rindahl provides no facts that individual members of the Board of Trustees had any personal involvement, or direct responsibility for, the alleged deprivation of Rindahl's rights, and any claims that he intended to bring against these individuals are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). See Jones, 104 F.4th at 1049.

injury actionable under § 1983." Sanders, 984 F.2d at 975–76 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 694 (1978)).

"To support a claim against a corporation acting under color of state law, plaintiff 'must show that there was a policy, custom, or official action that inflicted an actionable injury.'" Phillips v. Rose, No. 4:23-CV-00825-JSD, 2023 WL 5748434, at *6 (E.D. Mo. Sept. 6, 2023) (quoting Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006)). "[T]o prove a policy, custom or action, [the plaintiff] must show 'a continuing, widespread, persistent pattern of unconstitutional misconduct'" by the corporation's employees. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (quoting S.J. v. Kansas City Mo. Pub. Sch. Dist., 294 F.3d 1025, 1028 (8th Cir. 2002)). A § 1983 complaint need not "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Id. (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Rindahl makes conclusory statements that Avera Medical Group has shown "[i]ndifference . . . within their failure to [d]iagnosis [sic], and bring forth for treatment," Doc. 1 at 29, and regarding "Avera's failure to disclose / and refusal to treat [him,]" id. at 4. But these conclusory statements do not allege that these Avera facilities had a policy or custom that caused a violation of Rindahl's federal rights. While Rindahl disagrees with the interpretations of imaging, diagnoses, and treatment plans made by various Avera personnel, this too does not show the existence of an unconstitutional policy or custom. Therefore, Rindahl's claims against Avera McKennan Hospital, Avera St. Luke's Hospital, and Avera Lincoln County are dismissed without

30

prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### iv. Claims Relating to Single-Cell Status

Rindahl claims that the "DOC Administration, not to exclude the Warden of SDSP / Facility Warden," have demonstrated "reckless [d]isregard" to his safety by failing to enforce Rindahl's single-cell status under the PREA. Doc. 1 at 33–34. Rindahl alleges that the "DOC Defendants" acted with "intent to cause actual injury / harm under the 5th and 8th Amendments[.]" Id. at 34. While Rindahl cites to the Fifth and Eighth Amendments, he does not allege that prison officials failed to protect him from inmate violence, as he might in an Eighth Amendment failure to protect claim.[13] Instead, Rindahl appears to be arguing that he has been denied single-cell status as retaliation for his requests that he receive single-cell status under the PREA, id. at 20–21, 33–35, which this Court liberally construes as a First Amendment retaliation claim.[14]

To state a First Amendment retaliation claim, Rindahl must first show that he engaged in a protected First Amendment activity. Aldridge v. City of St. Louis, 75 F.4th 895, 898 (8th Cir.

---

[13] Rindahl states that he was placed with "an offender with an [sic] Mental Health unbalance, resulting within a fit and the breaking of State Property, resulting within his displacement within the Special Housing Unit." Id. at 20. Rindahl states that "these threats had continued within moving offenders out-sizing the plaintiff to cause physical harm." Id. But Rindahl does not provide that he was injured in any way as a result of these incidents. See id.; see also Doc. 7 at 1–2.

[14] In a previous action, Rindahl alleged violations of his First, Eighth, and Fourteenth Amendment rights based on the SDDOC's failure to provide him with a single cell. See Rindahl v. Reisch, No. 22-CV-4073-RAL, Doc. 12 at 43. Upon screening, this Court dismissed Rindahl's First Amendment claim regarding his cell occupancy under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), noting that Rindahl "does not explain how the First Amendment is implicated by his double-cell status." Id. The Court also dismissed Rindahl's Eighth and Fourteenth Amendment claims regarding his cell occupancy without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Id. at 43–45.

31

2023) (citing Molina v. City of St. Louis, 59 F.4th 334, 338 (8th Cir. 2023)). Rindahl must then point to "an adverse action that would chill a person of ordinary firmness from continuing in the protected activity." Id. at 899 (citation modified). Lastly, Rindahl must show that the adverse action was "a 'but-for cause' of the injury [suffered.]" Beard v. Falkenrath, 97 F.4th 1109, 1119 (8th Cir. 2024) (alteration in original) (quoting Nieves v. Bartlett, 587 U.S. 391, 399 (2019)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." Nieves, 587 U.S. at 398.

Here, Rindahl states that he filed eKites, presumably regarding his single-cell status. Doc. 1 at 20–21. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)). But Rindahl provides only conclusory statements that the defendants had a retaliatory motive, stating that "the inaction's actions of the mentioned personnel[15] have been shown within an attempt to place the plaintiffs [sic] health and safety within a [sic] intentional endangerment, and to cause physical harm/injury, when shown to intentional refuse to enforce a PREA Regulation[.]" Doc. 1 at 21. Rindahl must plead that filing the eKites "was a but-for cause of the adverse action, meaning that the adverse action against the plaintiff would not have been taken absent a retaliatory motive." De Rossitte, 22 F.4th at 804 (citation modified). As in De Rossitte, Rindahl has "no evidence, either direct or indirect, linking any adverse action to the filing of his prison grievances. His mere allegations of retaliatory motive are

---

[15] In the section of his complaint regarding this issue, Rindahl mentions Sergeant Duncan, an unnamed housing sergeant, and Major Hanson. Doc. 1 at 20–21. But none of these individuals are named as defendants. See id. at 1–2. When referencing this issue later in his complaint, Rindahl references "DOC Administration, not to exclude the Warden of SDSP / Facility Warden[,]" but it is not clear from his complaint what the involvement of these individuals was in the situation. Id. at 33.

insufficient." Id.  Therefore, his First Amendment retaliation claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

To the extent that Rindahl is attempting to bring a claim for lack of compliance with the PREA,

> this Court has noted in previous filings by Rindahl that "[c]ourts have found that the PREA . . . does not create a private right of action enforceable by an individual civil litigant." Rindahl v. Kaemingk, 2017 U.S. Dist. LEXIS 105964, at *2 (D.S.D. July 10, 2017) (citation omitted).  Thus, he cannot bring these claims under the PREA or under § 1983.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002) ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action.").

Rindahl v. Reisch, No. 4:22-CV-04703-RAL, Doc. 12 at 47–48.  As this Court informed Rindahl in a previous case, he also cannot state a claim that defendants violated prison policy because "there is no § 1983 liability for violating prison policy." Rindahl v. Kaemingk, No. 4:17-CV-04088-RAL, Doc. 4 at 2 (D.S.D. July 10, 2017) (citing Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997); Moore v. Rowley, 126 F. App'x 759 (8th Cir. 2005) (per curiam)).  Therefore, any claims Rindahl is attempting to assert under the PREA itself or based on a violation of prison policy are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**v.    Federal Deceit / Fraud Claims**

In the section of his complaint labeled "Federal Deceit / Fraud[,]" Rindahl alleges that the adoption as policy of the DOC staff code of ethics is inconsistent with SDCL § 24-1-25 to the extent that the enactment of this inconsistent policy constitutes "a form of deceit" and "intentional Fraud[.]"  Doc. 1 at 21–22.  In this same section, Rindahl alleges generally that "Health Care Fraud" has occurred, and that there has been a "defrauding of [Rindahl] of the contractually mandated Medical / Medical [sic] Treatment under Avera Medical Group[,]" and that "these

33

inaction actions have not been limited to a single incident, when shown to have created an international Breach of Contract" between Avera and the Department of Corrections. Id. at 22, 23.

Rindahl's broad allegations of fraud are conclusory statements that are not enough to state a cognizable claim. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead with particularity, the party alleging fraud "must typically identify the 'who, what, where, when, and how' of the alleged fraud." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (quoting United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003)). Here, Rindahl does not allege sufficient facts to show he is entitled to any form of relief against the defendants for a fraud claim, or even enough for this Court to understand what fraud claims he is alleging. Therefore, Rindahl's fraud-based claims are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). See Smith v. Humphrey, No. 8:24CV271, 2025 WL 1531694, at *3 (D. Neb. May 29, 2025) (dismissing a fraud claim on screening because the plaintiff's fraud allegations were "too vague to state a claim for relief").

In the section of his complaint relating to fraud, Rindahl also asserts that

the State through its Department of Corrections has failed within intentional acts, when shown after several eKites to investigate into / and or enact an [Independent Investigation] into said issues of Health Care Fraud though one of the School of Medicines, when shown within the employment of key positions within the Department of Corrections, and its Health Services, such as Certified Nurse Practitioner's; Physician Assistance and Doctors extend from the Medical Provider Contracts.

Doc. 1 at 23 (alteration in original) (emphasis in original omitted). Liberally construing his complaint, Rindahl is alleging a Fourteenth Amendment substantive due process violation based

34

on a failure to conduct an adequate investigation into his claims of health care fraud. Id. "To establish a violation of a substantive due process right, the plaintiff must prove '(1) that [an] official violated one or more fundamental constitutional rights, and (2) that the conduct of the . . . official was shocking to the contemporary conscience.'" Torgerson v. Roberts Cnty., 39 F.4th 638, 644 (8th Cir. 2025) (citing Flowers v. City of Minneapolis, 478 F.3d 869, 873 (8th Cir. 2007)). Normally, a failure to investigate claim arises in the context of a criminal defendant alleging that the failure to investigate resulted in a denial of the fundamental right to obtain a fair criminal proceeding. See Wilson v. Lawrence Cnty., 260 F.3d 946, 956 & n.8 (8th Cir. 2001). Here, however, Rindahl does not state that the defendants failed to investigate criminal charges against him. Instead, Rindahl avers that this failure to investigate health care fraud has "continually emplaced [him] . . . within an, endangerment, and threat of continued injury / and or harm[.]" Doc. 1 at 23. It is not clear how a fundamental liberty interest is implicated here – Rindahl does not provide any explanation as to how his life is in danger, what the "threat of continued injury" is, or how a failure to investigate fraud has led to this threat. Id.

Even if Rindahl had established a fundamental liberty interest, he fails to plead that the conduct of DOC officials rose to the level of conscience-shocking. "[N]either negligent nor grossly negligent failure to investigate amounts to a constitutional violation[,]" and "[o]nly the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to the conscience-shocking level." Torgerson, 139 F.4th at 645 (quoting Davis v. White, 794 F.3d 1008, 1015 (8th Cir. 2015)); Folkerts v. City of Waverly, 707 F.3d 975, 980 (8th Cir. 2013) ("the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Rindahl's allegations

35

fall far short of the high bar to establish conscience-shocking behavior, and his Fourteenth Amendment failure to investigate claims are therefore dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(a)(ii).

### 2.    ADA and Rehabilitation Act Claims

Rindahl brings claims under "Title II Section §504 of the Americans with Disability Act[.]" Doc. 1 at 2 (footnote omitted).  Liberally construing his complaint, Rindahl is alleging claims under Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act. Other than referencing the ADA and the Rehabilitation Act in the list of claims he purports to bring, the only other mention of these statutory provisions that Rindahl makes in his complaint is the following:

> Rindahl would also require the Court based upon Rindahl's disability, the retaliation out of Housing Staff, to which within their refusal to enforce provisions of the Institutionalize Persons Act 42 USC §1997,[16] have altered the Public Record, violating provisions of SDCL § 22-11-23,[17] to bully, intimate, and to cause physical harm for bringing forth grievance,; this can / and should be seen out of Warden's Office, Facility Warden's Office, adjoin question of Housing Sgt Duncan, address the Injunction /TRO[18] within such, the inaction actions of personnel had been done based upon Rindahl's Disability under definition of a Serve [sic] Mental Illness,

---

[16] The statute Rindahl cites to provides definitions relevant to 42 U.S.C. Chapter 21, concerning the civil rights of institutionalized persons.  42 U.S.C. § 1997.  It is not clear from Rindahl's complaint what provisions of this statute he is alleging were violated.

[17] This provision of South Dakota state law makes it a crime to "knowingly make[] a false entry in any public record, or falsely alter[] any public record[.]"  SDCL § 22-11-23.

[18] It is not clear from Rindahl's complaint what, if any, injunctive relief he seeks.  Rindahl previously filed material that appeared to be seeking a temporary restraining order and preliminary injunction.  Docs. 7, 7-1.  Rindahl referenced the PREA and appeared to take issue with the selection of his cellmate.  See id.  But because Rindahl's pleading did not satisfy the requirements of Federal Rule of Civil Procedure 65(b), and because federal courts do not micromanage cell placements of state inmates, this Court denied Rindahl's request for a preliminary injunction or temporary restraining order.  Doc. 8.

and his inability to understand his rights and contents thereof; under the ADA Title II Section 504.

Doc. 1 at 35. This Court evaluates these claims together because "[t]he ADA and § 504 of the Rehabilitation Act are 'similar in substance' and, with the exception of the Rehabilitation Act's federal funding requirement, 'cases interpreting either are applicable and interchangeable' for analytical purposes." Folkerts, 707 F.3d at 983 (quoting Bahl v. Cnty. of Ramsey, 695 F.3d 778, 783 (8th Cir. 2012)).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "For a prima facie Title II ADA violation, a qualified individual with a disability must be excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or be otherwise discriminated against by the entity, by reason of the individual's disability." Folkerts, 707 F.3d at 983 (citing Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998)).

Section 504 of the Rehabilitation Act provides that:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794. "For a prima facie § 504 violation, a qualified individual with a disability must be denied, on the basis of the individual's disability, the benefits of a program or activity of a public entity receiving federal funds." Folkerts, 707 F.3d at 983 (citing M.P. ex rel. K. v. Indep. Sch. Dist. No. 721, 326 F.3d 975, 981–82 (8th Cir. 2003)).

Title II of the ADA applies to public entities, defined as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority[.]" 42 U.S.C. § 12131(1) (citation modified).  Not included in this definition, however, are "defendants in their individual capacities[.]"  Maday v. Dooley, No. 4:17-CV-04168-KES, 2018 WL 4334071, at *3 (D.S.D. May 30, 2018), report and recommendation adopted by 2018 WL 4047116 (D.S.D. Aug. 24, 2018).  "The Eighth Circuit held in an *en banc* decision that Congress' designation of liability for 'public entities' under Title II of the ADA necessarily implied that there was no liability for individuals under that statute."  Id.; see also Randolph v. Rodgers, 253 F.3d 342, 348 (8th Cir. 2001) ("We agree that the public-entity limitation precludes ADA claims against state officials in their individual capacities[.]").  Therefore, any ADA claims Rindahl intended to assert against individual defendants are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and this Court construes Rindahl's ADA claims as being brought against the SDDOC.

Similarly, Section 504 of the Rehabilitation Act does not provide for claims against individuals.  See Damron v. N.D. Cmm'r of Corrs., 299 F. Supp. 2d 970, 979 (D.N.D. 2004), aff'd, 127 F. App'x 909 (8th Cir. 2005) (per curiam); Rudiger v. St. Francois Cnty., No. 4:22 CV 1103 RWS, 2023 WL 5748439, at *3 (E.D. Mo. Sept. 6, 2023) ("Section 504 of the Rehabilitation Act simply do[es] not impose liability on individual defendants in their individual capacities." (alteration in original) (citation omitted)).  Therefore, any Rehabilitation Act claims Rindahl intended to assert against individual defendants are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and this Court construes Rindahl's Rehabilitation Act claims as being brought against the SDDOC.

38

Before considering whether Rindahl has plausibly alleged an ADA or Rehabilitation Act claim against the SDDOC, this Court must consider whether the Eleventh Amendment bars Rindahl's claims. The Eleventh Amendment precludes Rindahl from suing the state of South Dakota or its agencies, including the SDDOC,[19] in federal court. Arlt v. Mo. Dep't of Corrs., 229 F. Supp. 2d 938, 942 (E.D. Mo. 2002). But Congress may abrogate a state's Eleventh Amendment immunity if Congress unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. Id. (citing Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001)).

Beginning with Rindahl's ADA claims, the Eighth Circuit has held that Title II of the ADA is "beyond Congress' power under the Fourteenth Amendment's enforcement clause." Id. (citing Alsbrook v. City of Maumelle, 184 F.3d 999, 1007 (8th Cir. 1999)). Because the enactment of Title II of the ADA did not validly abrogate a state's Eleventh Amendment immunity, a district court does not have subject-matter jurisdiction over any Title II ADA claim seeking compensatory or punitive damages, as well as injunctive relief, against the state or a state agency. Id. Therefore, Rindahl's ADA claim against the SDDOC is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

As for Rindahl's claims under the Rehabilitation Act, "[t]he Rehabilitation Act requires States that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504." Jim C. v. United States, 235 F.3d 1079, 1081 (8th Cir. 2000) (citation omitted). "Thus, a plaintiff wishing to pursue a Rehabilitation Act claim against the state will need to show that the agency in question waived its Eleventh Amendment immunity with respect to Section 504 of the Rehabilitation Act and that the waiver is valid under

---

[19] The SDDOC was created by the state legislature. See SDCL § 1-15.1.2.

39

the Spending Clause." Damron, 299 F. Supp. 2d at 978 (citing Randolph, 253 F.3d at 349). Here, Rindahl does not assert that the SDDOC has waived its Eleventh Amendment immunity with respect to § 504 of the Rehabilitation Act or that any such waiver is valid under the Spending Clause. See generally Doc. 1. Therefore, his Rehabilitation Act claim against the SDDOC for monetary damages is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Even if Rindahl's claims were not barred by sovereign immunity, his ADA and Rehabilitation Act claims would still fail. Rindahl seeks only compensatory and punitive damages. Doc. 1 at 34. But punitive damages are not available under the ADA or the Rehabilitation Act. Meagley v. City of Little Rock, 639 F.3d 384, 390 (8th Cir. 2011). As for compensatory damages, proof of discriminatory intent is required for a plaintiff to recover compensatory damages under the ADA and the Rehabilitation Act. Id. at 389. To demonstrate discriminatory intent, a plaintiff "must show that the [defendant] was deliberately indifferent to the rights secured to [him] by the ADA and Rehabilitation Act in order to recover compensatory damages." Id.

Rindahl has not alleged facts that the SDDOC was aware of his alleged ADA status or rights, let alone deliberately indifferent to these rights. It is not clear from Rindahl's complaint that he has been excluded from programs, denied certain benefits, or discriminated against[20] based on his disability.[21] See generally Doc. 1. Rindahl states that "the inaction actions of personnel

---

[20] Rindahl states that "Housing Staff" have retaliated against him by refusing to enforce certain statutory provisions as a means "to bully, intimate [sic] and to cause physical harm for bringing forth grievance[.]" Doc. 1 at 35. But Rindahl alleges that this retaliation is due to his filing of grievances, not because of a disability as defined under the ADA or the Rehabilitation Act. See id.

[21] Rindahl provides correspondence addressed to him from "Mental Health, South Dakota State Penitentiary" listing mental health diagnoses made in 2012. Doc. 1-1 at 3. While certain mental health conditions may qualify as a disability under the ADA, see Rudiger, 2023 WL 5748439, at

40

had been done based upon Rindahl's Disability[,]" but it is not clear what "inaction" constituted a violation of the ADA or the Rehabilitation Act. Id. at 35. Therefore, Rindahl has failed to show that the SDDOC was deliberately indifferent to the rights secured to him, if any, under the ADA or Rehabilitation Act.

### 3.    State-Law Claims

Rindahl attempts to bring a number of state-law claims, including claims under SDCL §§ 24-2-10 and 20-10, medical malpractice claims, breach of contract claims,[22] and "ARSD'S[,]" which this Court believes to be a reference to the South Dakota Administrative Rules. Doc. 1 at 2. Under 28 U.S.C. § 1367(a), this Court "shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the

---

*4 (citations omitted), Rindahl has not alleged here that his disability limits major life activities or otherwise fits the definition of a disability under the ADA or the Rehabilitation Act. See generally Doc. 1; see also 42 U.S.C. § 12102(1) (definition of a disability under the ADA); 29 U.S.C. § 705(20)(A) (definition of a disability under the Rehabilitation Act). Rindahl also has not alleged that the SDDOC was aware that Rindahl had a disability under the ADA. See generally Doc. 1.

[22] In a previous suit, Rindahl attempted to bring state-law breach of contract claims against third-party medical provider defendants. Rindahl v. Reisch, 22-CV-4073-RAL, Doc. 12 at 36. This Court explained to Rindahl in its § 1915A screening order that:

> "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." SDCL § 53-2-6. But "[t]he party claiming third-party beneficiary status must show 'that the contract was entered into by the parties directly and primarily for his benefit.'" Sisney v. South Dakota, 754 N.W.2d 639, 643 (S.D. 2008) (quoting Mercado v. Mitchel, 264 N.W.2d 532, 538 (Wis. 1978)). "[A]s a general rule, a private party who contracts with [a] public government entity does not open itself to liability at the hands of the public." Id. at 644 (citation omitted).

Id. (alterations in original). Because Rindahl made no claims that he was an express beneficiary in the contracts he sought to enforce, this Court dismissed Rindahl's state-law medical breach of contract claims for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Id. Here as well, Rindahl makes no allegations that he is an express beneficiary of the contract he seeks to enforce. Doc. 1 at 22.

41

same case or controversy[.]" 28 U.S.C. § 1367(a). However, the Court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Because all claims over which a federal court might have original jurisdiction have been dismissed, this Court declines to exercise supplemental jurisdiction over Rindahl's state-law claims under 28 U.S.C.§ 1367(c)(3).

### 4.   Remaining Claims

Rindahl's complaint does not make clear why he believes he has civil cause of action against the various individuals and entities named in his complaint. To the extent Rindahl intended to state any other claims not addressed in this screening order, those claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). See Stone, 364 F.3d at 914.

## III.   Remaining Motions

In his complaint, Rindahl requests the "[t]radesmen of appointment of a Member of Student of College of Law under State Law[,]" which this Court liberally construes as a motion to appoint counsel. Doc. 1 at 35. Because Rindahl's claims are all dismissed, the motion to appoint counsel is denied as moot. Rindahl also filed motions for emergency § 1915A screening. Docs. 5, 10. Because this Court has screened Rindahl's complaint, these motions are denied as moot.

## IV.   Conclusion

Accordingly, it is

ORDERED that Rindahl's official capacity claims for monetary relief against all defendants are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

ORDERED that Rindahl's deliberate indifference to serious medical needs claims, against all medical personnel defendants and regarding each of the six medical issues, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that any claims Rindahl is attempting to bring under the Fifth Amendment are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Rindahl's claims against Haynes, Roemmich, Johnston, and Pirraglia are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Rindahl's claims against Magstadt and Rhoden are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Rindahl's § 1983 claims against the SDDOC and SDDOC Health Services are dismissed with prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that any claims that Rindahl intended to bring against individual members of the Board of Directors at various Avera facilities are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Rindahl's claims against Avera McKennan Hospital, Avera St. Luke's Hospital, and Avera Lincoln County are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

43

ORDERED that Rindahl's First Amendment retaliation claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that any claims Rindahl is attempting to assert under the PREA itself or based on a violation of prison policy are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Rindahl's fraud-based claims are dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Rindahl's Fourteenth Amendment failure to investigate claims are dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Rindahl's claim under Title II of the ADA against all defendants is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Rindahl's claim under § 504 of the Rehabilitation Act against all defendants is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that this Court declines to exercise supplemental jurisdiction over Rindahl's state-law claims under 28 U.S.C.§ 1367(c)(3). It is further

ORDERED that to the extent Rindahl intended to state any other claims not addressed in this screening order, those claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

45

ORDERED that Rindahl's motion to appoint counsel is denied as moot. It is finally

ORDERED that Rindahl's motions for emergency § 1915A screening, Docs. 5, 10, are

denied as moot.

DATED June 9th, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE